## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

*United States of America v. Lamont Moore*
Case No. 3:15-cr-00101-TMB-2

By:          THE HONORABLE TIMOTHY M. BURGESS

PROCEEDINGS:     ORDER FROM CHAMBERS

The matter comes before the Court on Defendant Lamont Moore's *pro se* Motion for Compassionate Release at Docket 893 and subsequent Motion for Compassionate Release at Docket 903 (together, the "Motion"). Moore asks for compassionate release on the basis that he is the only available caregiver for his terminally ill wife.[1] The U.S. Probation Officer ("USPO") recommends against a sentence reduction but finds that Moore's release plan is appropriate in the event he is released.[2] The Government opposes the Motion.[3] For the reasons discussed below, the Motion is **GRANTED**.

### A. Background

On November 18, 2015, a federal grand jury indicted Moore for a drug conspiracy, among other charges.[4] Moore subsequently pleaded guilty to one count of Conspiracy to Distribute Controlled Substances, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B).[5] On December 19, 2016, the Court sentenced Moore to 120 months' imprisonment followed by five years of supervised release.[6] During his federal case, the State of Alaska simultaneously prosecuted Moore for First Degree Assault.[7] Moore pleaded guilty to the state assault charge and, on January 4, 2017, was sentenced to 15 years' imprisonment.[8] On December 3, 2019, the Court issued an Amended Judgment clarifying that Moore's federal sentence would run concurrently with his state sentence.[9]

On February 26, 2019, after serving approximately five years of his state sentence, Moore was paroled by the State of Alaska.[10] Moore states his early release was due to his extraordinary work

---

[1] Dkts. 893; 903 (Motions). Moore also filed a Reply, which the Court accepted. Dkts. 916 (Reply); 918 (Text Order).
[2] Dkts. 898 (USPO Memorandum); 921 at 3 (Amended USPO Memorandum) (stating "defendant's release plan appears appropriate").
[3] Dkt. 914 (Response).
[4] Dkt. 2 (Indictment).
[5] Dkts. 326 (Plea Agreement); 383 (Change of Plea Minute Entry).
[6] Dkts. 531 (Sentencing Minute Entry); 538 (Judgment).
[7] *State of Alaska v. Lamont Moore*, Case No. 3AN-15-04428CR (filed on May 19, 2015).
[8] Dkt. 753 at 1 (Order Granting Motion to Alter Judgment).
[9] Dkt. 757 at 2 (Amended Judgment); *see also* Dkt. 753 at 3.
[10] Dkt. 914-3 at 2 (Sentence Monitoring Computation Data).

1

in prison and with other prisoners.[11] Moore was moved to federal custody and is currently serving the remainder of his federal sentence at Federal Correctional Institution Sheridan ("FCI Sheridan").[12] Moore is scheduled to be released on June 26, 2025.[13]

### B. Motion for Compassionate Release

Moore seeks compassionate release on the basis that his wife of over 15 years, Allison Moore, is dying with no one to care for her.[14] Moore asserts that his wife suffers from acute alcoholic cirrhosis, among other illnesses.[15] She "needs a liver transplant," but doctors predict her liver "will almost certainly fail before the six-month period passes that is required to determine if she is even eligible for a transplant."[16] Thus, Moore says, Allison may well have less than six months to live.[17] In the meantime, she is in significant pain, is unable to take pain medication because of her liver, and is unable to care for herself.[18] And while she has a nurse "who comes by a couple of times a week," Allison needs more frequent care.[19] Allison's mother was assisting with her care but was forced to leave Alaska "to return to her job."[20] Likewise, Moore's children are unable to care for their mother, leaving Moore as his wife's only potential caregiver.[21] Moore implores the Court to allow him to fill that role. He states that his "wife has stood by [him] thru [sic] all [his] ups and downs of life" and he would like "the chance to do the same for her."[22] Upon release, Moore plans to live with his wife.[23]

The Government opposes the Motion, arguing primarily that (1) Moore failed to exhaust his administrative remedies because he requested home confinement from the Warden, not compassionate release;[24] (2) Moore "has not alleged that he is the only available caregiver" for his wife as he "admits" that she has a nurse who comes by a "'couple of times a week'";[25]

---

[11] Dkt. 903 at 4.
[12] Dkt. 898 at 1.
[13] *Id.*
[14] Dkts. 893 at 1; 903 at 1. Moore makes other arguments in support of his release, including that the COVID-19 pandemic, when considered along with his wife's illness, creates "extraordinary and compelling" circumstances. *See* Dkt. 903 at 8–10. Because the Court finds Moore's wife's illness is sufficient, it need not and will not reach Moore's additional arguments.
[15] Dkts 893 at 1; 893-1 at 1 (Allison Moore's Medical Records).
[16] Dkts. 903 at 6; 904 at ¶ 5 (Williams Decl.) (recounting defense counsel's conversation with Allison Moore). Allison "did not have the ability to write or sign" her own declaration. Dkt. 903 at 6.
[17] Dkts. 893 at 1, 903 at 6.
[18] *See* Dkt. 904 at ¶¶ 4, 6, 11.
[19] Dkts. 903 at 6; 904 at ¶¶ 4–11.
[20] Dkt. 904 at ¶ 4.
[21] *Id.* at ¶ 11.
[22] *Id.* at 6 (Exhibit 2 to William's Decl.).
[23] Dkt. 920 (Proposed Release Plan).
[24] Dkt. 914 at 4–5.
[25] *Id.* at 8–9.

2

(3) Moore's claims about his wife's condition are "dubious";[26] (4) even if Moore's wife is dying, her illness is "not an appropriate reason for shortening his sentence given the existence of administrative furloughs";[27] and (5) Moore cannot be safely released because he has a substantial criminal record and "was convicted of drug conspiracy based on gang-furthering activities."[28]

In Reply, Moore notes that even if his initial request for home confinement does not satisfy the exhaustion requirement, he made an additional request to the Warden for compassionate release on or about August 10, 2021, at the direction of his counsel.[29] Moore also asserts he is likely ineligible for furlough.[30]

### C. Legal Standard

Pursuant to 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act, a defendant may move the district court for a sentence reduction after exhausting their administrative remedies.[31] The court may grant the motion if, after considering the applicable factors set forth in 18 U.S.C. § 3553(a), it finds "extraordinary and compelling reasons warrant such a reduction[.]"[32] For guidance, the court may look to the Sentencing Commission's policy statement on compassionate release found in U.S.S.G. § 1B1.13.[33] That policy statement provides that "extraordinary and compelling reasons" exist if the defendant would be the only available caregiver for an incapacitated spouse.[34] However, the policy statement is "not binding" on courts evaluating motions filed by defendants under 18 U.S.C. § 3582(c)(1)(A).[35]

### D. Discussion

As a threshold matter, the Court finds that Moore exhausted his administrative remedies as is required by 18 U.S.C. § 3582(c)(1)(A). The Court agrees with the Government that Moore's April request for home confinement does not satisfy the statutory requirement. However, Moore asserts that he submitted an additional request for compassionate release to the Warden at FCI Sheridan on or about August 10, 2021, as is reflected in a contemporaneous email to his counsel.[36] Courts

---

[26] *Id.* at 9, 11.
[27] *Id.* at 2, 10.
[28] *Id.* at 11–12. The Government also responds to Moore's COVID-19-related arguments by noting that Moore is vaccinated and, thus, protected from severe illness. *Id.* at 2. As noted above, the Court finds Moore's wife's illness sufficient and will not reach the impact of COVID-19 in this case.
[29] Dkt. 916 at 1.
[30] *Id.* at 1–2.
[31] *See* Pub. L. 115-391, 132 Stat. 5194, 5239 (2018).
[32] 18 U.S.C. § 3582(c)(1)(A).
[33] *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021) ("The Sentencing Commission's statements in U.S.S.G. § 1B1.13 may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant, but they are not binding.").
[34] U.S.S.G. § 1B1.13 cmt. n.1(C)(ii).
[35] *Aruda*, 993 F.3d at 802.
[36] Dkt. 916 at 1, 3.

have accepted such assertions where the court has no reason to assume bad faith on the part of the defendant or their counsel.[37] The Court has no reason to assume that Moore or his counsel have acted in bad faith here. Thirty days have passed since Moore's request, and the Warden has not granted relief.[38] Accordingly, the Court is satisfied that it may consider the merits of Moore's Motion.

Proceeding to the merits, the Court finds that Moore has demonstrated "extraordinary and compelling reasons" to justify his release. Moore is the only available caregiver for his incapacitated wife who urgently needs his help.[39] The Court agrees with the Sentencing Commission that such circumstances are "extraordinary and compelling."[40] Allison should not suffer alone, and Moore should not be kept from caring for his wife of over 15 years during what might be the final moments of her life.

Further, the Court is satisfied that Moore's Motion, including Allison's medical records and defense counsel's sworn declaration, establish the urgency of the situation.[41] The Government disagrees, arguing that Moore's claims are "suspect."[42] In doing so, the Government selectively cites to portions of Allison's medical records and suggests they demonstrate that Moore and his counsel are exaggerating Allison's medical condition.[43] The Government also claims Moore's assertion that Allison has had a breathing tube is incompatible with his attorney's report that he spoke with Allison, saying, "The defendant told [the USPO] that his wife had a breathing tube, leading [the USPO] to surmise she may be *unable* to speak, but his attorney spoke to her."[44] The Government has offered no evidence showing the selected portions of Allison's medical records

---

[37] *See United States v. Levario*, No. 2:12-CR-00399-JAM-1, 2020 WL 3256918, at *2 (E.D. Cal. June 16, 2020) (accepting as true defendant's representation that he requested compassionate release from the Warden where the Court had no reason to assume bad faith on the part of defendant or counsel); *United States v. Leigh Ann Massengill*, Case No. 3:17-cr-00091-02-TMB, (closed April 11, 2019) (Dkt. 146) (same).

[38] *See United States v. Garcia*, No. CR 13-00884 HG-01, 2020 WL 3547933, at *3 (D. Haw. June 30, 2020) (rejecting argument that the court could not consider defendant's compassionate release motion filed within 30 days of requesting release from the warden where 30 days had since lapsed).

[39] The Government asserts that Moore is not, in fact, Allison's "only available caregiver" under the Sentencing Commission's guiding policy statement because he "admits" Allison is visited on occasion by a nurse. Dkt. 914 at 9. That argument fails. Moore's filings make clear that Allison needs more frequent care than what her nurse offers and that Moore is the only available caregiver to provide Allison the care she requires. *See* U.S.S.G. § 1B1.13.

[40] *See* U.S.S.G. § 1B1.13 cmt. n.1(C); *see also United States v. Bucci*, 409 F. Supp. 3d 1, 2 (D. Mass. 2019) (finding defendant's role as only potential caregiver for his ailing mother was an "extraordinary and compelling reason" for compassionate release); *United States v. Walker*, No. 1:11 CR 270, 2019 WL 5268752, at *2 (N.D. Ohio Oct. 17, 2019) (granting release for defendant to assist in caring for his terminally ill mother).

[41] *See generally* Dkts. 893-1; 904.

[42] Dkt. 914 at 9.

[43] *Id.*

[44] *Id.* (emphasis in original).

are irreconcilable with Moore's claim that Allison was given six months to live without a liver transplant. Absent such evidence, the Court will take Moore and his counsel at their word.[45] Similarly, the Court rejects the Government's argument that Moore's claims are incompatible with his attorney's declaration. The fact that the USPO "surmise[d]"[46] Allison was unable to "readily communicate"[47] with the USPO does not compel the Court to conclude Allison could not have spoken to her husband's attorney. Moore's attorney has put his professional credibility at stake by submitting a sworn declaration attesting to his conversation with Allison in which she explained the seriousness of her prognosis.[48] This evidence is sufficient under the circumstances.

In addition, while the Government claims emergency furlough would be a more appropriate form of relief, it offers no authority for the proposition that the existence of an emergency furlough program precludes the Court from granting compassionate release. Thus, the Court will not deny compassionate release on that basis.

The Court also finds that the relevant § 3553(a) factors weigh in favor of a sentence reduction here. Moore has spent over six years in custody and has made strong efforts to rehabilitate. While in prison, Moore "has taken classes on anger management and conflict resolution, helped suicidal inmates, worked as a mental health counselor, and helped build the Restorative Justice Initiative at the Spring Creek Correctional Center."[49] Moore's probation officer wrote about Moore's time at the Spring Creek Correctional Center that "[i]f [someone] was in crisis, security staff would call Mr. Moore over to help deescalate the person. He was asked to move into the [mental health] unit after a while and lived in the mental health unit for over 150 days" where he was "pretty much on call for [anyone] in the unit that was in crisis."[50] Moore also says he is a "changed man," pointing to his significant work helping his peers in prison and noting, "I've taken steps to better myself and in the process I've helped others along the way." The Court is inclined to agree and finds that Moore is no longer a danger to the community such that his release should be denied. Thus, while drug conspiracy is a serious crime, Moore's characteristics and the time he has already served satisfy the sentencing goals in this case.

The Government relies only on Moore's criminal history to argue that he cannot be safely released.[51] This argument ignores the substantial work Moore has done while incarcerated to better

---

[45] The USPO also concludes that Moore's filing "did not fully verify the urgency of the information contained in his motion." Dkts. 898 at 3; 921 at 3. However, when the USPO spoke with Allison, she confirmed she is "on the waiting list for a liver transplant, she has congestive heart failure, and she has pneumonia of the brain." Dkt. 921 at 2. In addition, Allison was unable to give the USPO a virtual walkthrough of her home because of her "physical condition and limited mobility." *Id.*
[46] Dkt. 914 at 9.
[47] Dkt. 898 at 2.
[48] *See generally* Dkt. 904.
[49] Dkt. 903 at 3.
[50] Dkt. 904 at 4 (Exhibit 1 to Williams Decl.).
[51] Dkts. 898 at 2–3; 914 at 11–12.

5

himself and his community.[52] Acknowledging the seriousness of Moore's criminal history, the Court finds his demonstrated rehabilitation efforts, coupled with his wife's urgent need for his care, outweigh Moore's criminal record. In addition, Moore will be subject to supervised release, which mitigates concerns that Moore will pose a danger to his community upon release.

Accordingly, for the reasons discussed above, the Motion at Dockets 893 and 903 is **GRANTED** with the following conditions:

1. The Court will issue an Amended Judgment. Moore's term of imprisonment shall be reduced to time served. He shall be released on October 5, 2021, or as soon as possible pursuant to BOP COVID-19 protocols; and

2. Moore shall be subject to all the standard and special conditions of supervised release imposed in his original judgment. He shall also abide by local, state, and federal public health mandates.

Entered at the direction of the Honorable Timothy M. Burgess, United States District Judge.

DATE: September 30, 2021.

---

[52] *See Pepper v. United States*, 562 U.S. 476, 491 (2011) "[E]vidence of post[-]sentencing rehabilitation may be highly relevant to several of the § 3553(a) factors that Congress has expressly instructed district courts to consider at sentencing.").